UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LYNETTE W., [1]

|  |  |  |
|---|---|---|
| | Plaintiff, | Case # 19-CV-1168-FPG |
| v. | | DECISION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | | |
| | Defendant. | |

## INTRODUCTION

Plaintiff Lynette W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act.  ECF No. 1.  The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  ECF Nos. 11, 13.  For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In October 2014, Plaintiff protectively applied for DIB with the Social Security Administration ("the SSA").  Tr.[2] 83.  She alleged disability since May 2014.  Tr. 84.  Her application was denied during the administrative proceedings, but she obtained a stipulated remand on appeal to the district court.  Tr. 966.  Thereafter, Administrative Law Judge Stephen Cordovani

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter.  ECF No. 4.

(the "ALJ") issued an unfavorable decision, finding that Plaintiff was not disabled from May 5, 2014 (her alleged onset date) to September 3, 2016 (the date she returned to work).  Tr. 829-45. Plaintiff has now filed this action for review of that decision.  ECF No. 1.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period.  Tr. 832.  At step two, the ALJ found that Plaintiff had severe impairments of asthma, benign paroxysmal positional vertigo, and peripheral vestibulopathy.  *Id.*  At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment.  Tr. 836.

Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work with additional limitations.  *Id.*  At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a secretary during the relevant period.  Tr. 843-44.  In the alternative, the ALJ made a step-five finding and concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  Tr. 844-45.  The ALJ therefore found that Plaintiff was not disabled.  Tr. 845.

### II.   Analysis

Plaintiff argues that the ALJ erred in his assessment of her mental impairments and her balance impairments (benign paroxysmal positional vertigo and peripheral vestibulopathy).  The Court evaluates Plaintiff's arguments below.

#### a.   Mental Impairments

In his decision, the ALJ noted that a number of mental impairments were referenced in Plaintiff's medical record: major depressive disorder, panic disorder without agoraphobia, post-traumatic stress disorder ("PTSD"), and adjustment disorder with mixed, anxious, and depressed mood.  Tr. 833.  Plaintiff claims that her mental health worsened following a medically induced coma in summer 2014.  Tr. 655.  She suffered from depressed mood, tearfulness, daily panic

4

attacks, difficulties relaxing, worries about future medical events, insomnia, and frequent nightmares.  Tr. 655, 719.  In the years after the coma, Plaintiff received routine psychological treatment from Kristina Castillo, a licensed social worker, and Angela Roche, a nurse practitioner. *See, e.g.*, Tr. 655, 685-690.

During her treatment of Plaintiff, Roche completed a medical source statement, which is dated April 2015.  Tr. 703-05.  Roche opined that, due to her mental health following the coma, Plaintiff was unable to perform even basic tasks in competitive employment, like understanding and remembering very short and simple instructions, maintaining attention for two-hour segments, responding appropriately to changes in a routine work setting, and making simple work-related decisions.  *See* Tr. 703-04.

By contrast, consultative examiner Christine Ransom, Ph.D., did not find such significant deficits.  *See* Tr. 658-61.  In her opinion dated January 29, 2015, Dr. Ransom diagnosed Plaintiff with mild panic disorder, mild major depressive disorder, and mild PTSD.  Tr. 661.  She opined that Plaintiff would only have mild difficulties in a variety of basic work tasks.[3]  Tr. 660.

In July 27, 2017—approximately ten months after Plaintiff returned to work—consultative examiner Susan Santarpia, Ph.D., reached a similar conclusion with respect to Plaintiff's functional abilities.  *See* Tr. 1246-50.  She diagnosed Plaintiff with PTSD and adjustment disorder with mixed, anxious, and depressed mood, and opined that Plaintiff was mildly impaired in "interacting adequately with supervisors, coworkers, and the public, regulating emotion,

---

[3] Specifically, Dr. Ransom wrote:
> This individual will have mild difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks, perform complex tasks, relate adequately with others and appropriately deal with stress . . . .

Tr. 660.

controlling behavior, and maintaining well being, and being aware of normal hazards and taking appropriate precautions." Tr. 1249.

In his decision, the ALJ found Plaintiff's mental impairments non-severe at step two. Tr. 833-35. The ALJ read Plaintiff's treatment notes to reflect that her mental functioning was consistently "good" throughout the relevant period, with "largely benign" clinical findings and mild "GAF" scores. Tr. 834. Plaintiff's own functional report also suggested that she was not significantly limited. *See* Tr. 835. The ALJ highlighted Dr. Ransom's opinion that Plaintiff had "mild psychiatric conditions that would not significantly interfere with [her] ability to function on a daily basis." Tr. 834. He also noted that Dr. Ransom's evaluation was consistent with the view of the state agency consultant, T. Harding, Ph.D., who opined that Plaintiff's mental impairments were non-severe. *Id.*

When crafting the RFC, the ALJ again highlighted the GAF scores and Plaintiff's "modest mental health treatment." Tr. 841-42. In addition, the ALJ noted that Dr. Ransom's and Dr. Harding's opinions—both of which he assigned "great weight"—were consistent with Dr. Santarpia's opinion. The ALJ wrote, "[Dr. Santarpia's] opinion is corroborative of and consistent with earlier reporting including Dr. Ransom's report and the assessment of Dr. Harding. This lends strength to the opinions of those sources given the longitudinal consistency." Tr. 842. Ultimately, the ALJ included no non-exertional restrictions related to Plaintiff's mental impairments in the RFC determination. *See* Tr. 836.

On a variety of grounds, Plaintiff challenges both ALJ's non-severity findings and RFC assessments.

First, Plaintiff argues that the ALJ erred by relying on Dr. Harding's opinion, since he only had available to him two treatment notes from Plaintiff's mental-health providers. *See* ECF No.

11-1 at 14-15.   Furthermore, Plaintiff asserts that her condition worsened after Dr. Harding reviewed the medical record, rendering his opinion stale.

As a general matter, there "is no requirement that opinion sources have access to the complete record." *Alicia C. v. Comm'r of Soc. Sec.*, No. 17-CV-1235, 2019 WL 1470827, at *9 (N.D.N.Y. Apr. 1, 2019).  While in some cases an opinion "that is not based on a complete medical record cannot constitute substantial evidence," *Weston v. Colvin*, No. 16-CV-272, 2017 WL 4230502, at *4 (W.D.N.Y. Sept. 25, 2017), there is no "unqualified rule that a medical opinion is superseded by additional material in the record." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order).  The relevance of an opinion will depend on the contents of the opinion and the character of any subsequent medical evidence.  *See id.* (consulting psychologist's opinion did not become stale where the new medical evidence did "not raise doubts as to the reliability of [his] opinion").  An opinion is not stale where the claimant's condition remains stable. *See, e.g.*, *Mordean L. v. Comm'r of Soc. Sec.*, No. 19-CV-277, 2020 WL 6886557, at *3 (W.D.N.Y. Nov. 24, 2020) (fact that evaluator's opinion was issued "before the bulk of [the claimant's] mental health treatment" did not render it stale, where claimant's depression "remained the same").

Here, the ALJ reasonably relied on Dr. Harding's opinion.  In the ALJ's view, the severity of Plaintiff's mental impairment remained stable throughout the relevant period.  *See* Tr. 842. During that time, she received "modest mental health treatment," had "largely benign" mental status examinations, received consistent GAF scores, and "generally indicated she was 'okay'" at appointments. Tr. 834, 841.   Furthermore, Dr. Ransom and Dr. Harding assessed similar limitations in early 2015 as Dr. Santarpia did in July 2017.  *See* Tr. 842 (noting the "longitudinal consistency" of the opinions).  Although Plaintiff identifies some treatment notes that arguably show her condition worsened over time, *see* ECF No. 11-1 at 14-15, she does not explain why it

was unreasonable for the ALJ to reach a different conclusion. *See Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-119, 2019 WL 3083045, at *3 (W.D.N.Y. July 15, 2019) ("[T]he Court is not concerned with whether substantial evidence supports [the claimant's] position; rather, the Court must decide whether substantial evidence supports the ALJ's decision."). At most, Plaintiff has identified a conflict in the record, one which the ALJ was entitled to resolve. Under these circumstances, and in light of his reading of the medical record, the ALJ could reasonably give weight to Dr. Harding's opinion.

Second, Plaintiff argues that the ALJ improperly inferred from her GAF scores that her "impairments were non-severe." ECF No. 11-1 at 15. "GAF" stands for "Global Assessment of Functioning," and a GAF score is used by mental health professionals "to rate an individual's level of psychological, social, and occupational functioning on a hypothetical continuum" of mental-health illness. *Bellucco v. Comm'r of Soc. Sec.*, No. 18-CV-6346, 2019 WL 1593698, at *3 n.6 (W.D.N.Y. Apr. 15, 2019). "Courts in the Second Circuit have noted that GAF scores are of little probative value in the disability context. Although these scores are relevant, they do not necessarily contradict a medical source's opinion that the claimant is disabled, because GAF scores do not have a direct correlation to the severity requirements in the Commissioner's disorders listings." *Trankle v. Berryhill*, No. 16-CV-846, 2017 WL 5988046, at *4 (W.D.N.Y. Dec. 4, 2017) (internal quotation marks and brackets omitted).

The ALJ did not use the GAF scores in an impermissible manner. Indeed, he acknowledged that GAF scores are of limited use in the "assessment of disability." Tr. 841. The ALJ relied on the GAF scores as just another piece of evidence showing the mild character of Plaintiff's mental impairments and their stability over time. *See* Tr. 834, 841; *see also, e.g.*, *Townsend v. Comm'r of Soc. Sec.*, No. 17-CV-674, 2018 WL 6697001, at *3 (W.D.N.Y. Dec. 20,

2018) (ALJ properly used GAF scores "as a single piece of evidence in [the] overall analysis of [the claimant's] RFC").   Regardless, even if the ALJ's reliance on the GAF scores were erroneous, the error was harmless in light of the other record evidence that supported the ALJ's findings.   *See Leonard v. Comm'r of Soc. Sec.*, No. 14-CV-1353, 2016 WL 3511780, at *8 (N.D.N.Y. May 19, 2016).

Third, Plaintiff asserts that the ALJ misinterpreted Dr. Ransom's opinion by construing the "mild limitations to mean Plaintiff had no mental limitations whatsoever."   ECF No. 11-1 at 15. However, an examiner's opinion that a claimant has a "mild" limitation in an area is "consistent with [a] finding of nonseverity."   *Wilkins v. Comm'r of Soc. Sec.*, No. 18-CV-67, 2019 WL 2500500, at *5 (W.D.N.Y. June 17, 2019).   By the same token, "mild limitations" do not necessarily "require the addition of mental limitations in the RFC."   *Jane M.A. v. Comm'r of Soc. Sec.*, No. 19-CV-808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021).   Thus, while it is true that nonsevere impairments and "mild" limitations *can* cause functional restrictions, *see* ECF No. 11-1 at 16 (citing cases), Plaintiff does not articulate why the ALJ was *compelled* to interpret Dr. Ransom's opinion in that manner, particularly given the nature of the medical record.   Absent more developed argument, the Court cannot conclude that this argument warrants remand.[4]   *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

---

[4] To the extent Plaintiff is arguing that the ALJ failed to explain how he interpreted and weighed Dr. Ransom's opinion, that argument is not meritorious.   An ALJ's failure to fully express his reasoning does not, standing alone, "justify remand so long as the Court can glean the rationale of the decision."   *Vacanti v. Comm'r of Soc. Sec.*, No. 18-CV-368, 2020 WL 836387, at *2 (W.D.N.Y. Feb. 20, 2020).   Here, the Court can fairly glean from the decision that the ALJ interpreted Dr. Ransom's "mild" limitations to mean that they caused no functional restrictions that needed to be incorporated into the RFC.   *See* Tr. 834, 835, 841.   Plaintiff does not explain why this was an unreasonable interpretation of the opinion.

Fourth, Plaintiff asserts that the ALJ failed to "properly evaluate the opinion[] of [Nurse Practitioner] Roche"[5] because (1) Roche "examined [Plaintiff] twice by the time she provided her April 2015 opinion" while Dr. Ransom "only examined her" once; (2) as a treating source, Roche was entitled to greater weight; (3) the inconsistency between Roche's opinion and those of Dr. Santarpia and Dr. Harding was irrelevant; and (4) Roche's opinion was consistent with Dr. Ransom's opinion finding mild limitations.[6]  ECF No. 11-1 at 17-18.

However, Plaintiff's arguments fail to challenge the ALJ's central finding: that, based on the "longitudinal consistency" of the medical evidence and the opinions of Drs. Santarpia, Harding, and Ransom, Plaintiff's mental condition remained stable, mild, and functionally non-debilitating throughout the relevant period.  *See* Tr. 834-35, 841-42.  Given that preliminary finding, the ALJ could reasonably conclude that Roche's opinion—which indicated that Plaintiff's mental abilities had substantially deteriorated by April 2015—was inconsistent with the record and with the other medical opinions.  *See* Tr. 842-43 (ALJ's decision) (explaining that he gave more weight to the opinions of Drs. Harding, Ransom, and Santarpia over Roche because the former opinions were "well supported by the record").  The ALJ could reasonably give lesser weight to Roche's opinion because of these inconsistencies, *see Taillon v. Comm'r of Soc. Sec.*, No. 17-CV-6812, 2019 WL 1396837, at *3 (W.D.N.Y. Mar. 28, 2019); 20 C.F.R. § 404.1527(c)(4), and because of her status as a non-acceptable medical source.  *Piotrowski v. Comm'r of Soc. Sec.*, No. 18-CV-6075, 2019 WL 2266797, at *5 n.4 (W.D.N.Y. May 28, 2019) (noting that an ALJ may reasonably consider a treating provider's status as a non-acceptable

---

[5] Plaintiff also states that the ALJ's reasons for rejecting Castillo's opinion were "improper," but she fails to meaningfully explain why.  *See* ECF No. 11-1 at 17-18.  Therefore, the Court need not address that argument.  *Zannino*, 895 F.2d at 17.

[6] Again, while Plaintiff interprets Dr. Ransom's opinion to warrant some functional restrictions, she does not explain why the ALJ could not reasonably interpret the opinion in a contrary manner.

medical source in weighing the provider's opinion).  These reasons suffice to justify the weight the ALJ gave Roche's opinion, even if other reasons he articulated were erroneous or insufficient. *See Whitley v. Colvin*, No. 17-CV-121, 2018 WL 1026849, at *14 (D. Conn. Feb. 23, 2018) ("[W]here the ALJ has provided good reason to discount a medical opinion, the inclusion of other reasons may be harmless error.").

In sum, none of Plaintiff's arguments concerning her mental impairments warrants remand.

### b.  Physical Impairments

Plaintiff's argument concerning her benign paroxysmal positional vertigo ("BPPV") and peripheral vestibulopathy is compelling, however.  She argues that the ALJ erroneously assessed those impairments without the benefit of a medical opinion.  The Court agrees.

As a general matter, "an ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson.  While an ALJ may render common sense judgments about functional capacity, [he] must avoid the temptation to play doctor."  *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted); *see also Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y.  Mar. 6, 2015) ("[W]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as a general rule, the Commissioner may not make the connection himself." (internal quotation marks omitted)).  An ALJ "may not interpret raw medical data in functional terms," *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018), and for that reason, it is only where the claimant shows "relatively little physical impairment" that an ALJ may infer functional limitations from the medical evidence.  *House v. Astrue*, No. 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1,

2013).  Nevertheless, it bears emphasizing that an ALJ is otherwise free to make common sense inferences from the record.  *See, e.g.*, *Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (summary order) (noting that ALJ could reasonably infer from claimant's own testimony that she did not need to "elevate her feet/knees for two hours on a daily basis"); *Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018) (ALJ drew permissible inferences from claimant's daily activities to conclude that claimant could perform light work).

BPPV and peripheral vestibulopathy both relate to Plaintiff's symptoms of dizziness and imbalance.  *See, e.g.*, Tr. 497, 523, 812.  In his decision, the ALJ included a number of highly specific limitations related to these conditions, concluding that Plaintiff (1) could perform sedentary work, *i.e.*, walk and stand for up to two hours each workday; (2) frequently climb ramps and stairs, kneel, crouch, and crawl; (3) could not do work involving any balancing activities or use of ladders/ropes/scaffolds; (4) could not do work at unprotected heights or around dangerous moving mechanical parts; (5) could occasionally bend forward at the waist; (6) could not operate machinery; (7) could frequently handle and finger; (8) could not drive; (9) could not do rapid head movements; and (10) could not do work requiring a full field of vision.  Tr. 836.

The problem is that the ALJ appears to have fashioned these limitations largely from his own review of the medical evidence.  *See* Tr. 839-41.  Most of the ALJ's discussion concerning these conditions is a summary of the treatment notes and clinical findings from Plaintiff's providers.  *See id.*  The ALJ acknowledged but almost entirely rejected the relevant medical opinions.  There were two relevant consultative opinions in the record—issued by Donna Miller, D.O., and David Brauer, M.D.—and the ALJ rejected both because the examiners did not adequately consider Plaintiff's BPPV and peripheral vestibulopathy.  *See* Tr. 841, 842.  There were notes from Plaintiff's treating providers advising that Plaintiff should be excused from work, *see*

Tr. 715-17, which the ALJ discounted because they did not speak to Plaintiff's "specific functional abilities." Tr. 843. Finally, there was a medical opinion of treating neurologist Lixin Zhang, M.D., Ph.D., who opined in April 2015 that Plaintiff was unable to work and that she should not move her head rapidly, should not bend at the waist "for too long," and should rest in a reclined position. Tr. 713. The ALJ gave this opinion "some weight" and purported to incorporate "the stated functional limitations into the established residual functional capacity." Tr. 843. However, though the ALJ included limitations for rapid head movements and bending, he did not include any limitations for resting in a reclined position. *See* Tr. 713, 836.

Thus, aside from the two functional restrictions concerning rapid head movement and bending at the waist, the ALJ did not rely on any medical opinion to construct the various functional restrictions he included. This constitutes error. As the ALJ's own RFC determination shows, Plaintiff's BPPV and peripheral vestibulopathy were not minor physical impairments that could be analyzed through common sense. Consequently, the ALJ erred by using own lay judgment to "translate [Plaintiff's] clinical findings into extremely granular functional limitations." *Timothy S. v. Comm'r of Soc. Sec.*, No. 19-CV-1141, 2021 WL 661392, at *2 (W.D.N.Y. Feb. 19, 2021); *see also id.* at *1 ("[U]nless the RFC determination is so simple and mild that the ALJ can construct it based on common sense, the RFC determination must be supported by medical opinions." (internal quotation marks omitted).

The Commissioner responds that the RFC determination is "quite consistent with Plaintiff's own reported limitations." ECF No. 13-1 at 25. It is true that an ALJ does not erroneously "play doctor" when he simply relies on a claimant's "own testimony about her functional abilities" to construct the RFC. *Lisa P. v. Comm'r of Soc. Sec.*, No. 19-CV-1155, 2021 WL 826715, at *4 n.4 (W.D.N.Y. Mar. 4, 2021). But here, Plaintiff's reports of her limitations do

not appear to align with the ALJ's restrictions.  For example, Plaintiff stated she could stand for thirty minutes at a time and could walk but was "very unbalanced"; the ALJ found that Plaintiff could walk and stand for two hours each workday without any other restriction.  Plaintiff stated she gets dizzy when she kneels and squats; the ALJ concluded that she could kneel and crouch frequently, *i.e.*, up to two-thirds of each workday.  *See Lisa P.*, 2021 WL 826715, at *3 (defining "frequent").  Plaintiff reported that she could climb stairs "as long as I hold on"; the ALJ found that Plaintiff could use stairs up to two-thirds of each workday without any caveat about her need to use railings.  At least facially, the Court cannot agree with the Commissioner that the ALJ derived his restrictions simply from Plaintiff's own reports.

Finally, the Court also notes that while the ALJ purported to include the functional restrictions Dr. Zhang identified in the April 2015 opinion, he neither included the limitation on resting in a "reclined position" nor explained why he omitted it.  *See Whited v. Comm'r of Soc. Sec.*, No. 19-CV-887, 2020 WL 8675800, at *2 (W.D.N.Y. July 23, 2020) ("[W]hen an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions.").

For all of these reasons, the Court agrees with Plaintiff that the ALJ erred in his evaluation of the functional limitations resulting from her BPPV and peripheral vestibulopathy.  Remand is therefore warranted.  On remand, the ALJ should obtain additional opinion evidence that can shed light on the nature of and functional limitations resulting from Plaintiff's BPPV and peripheral vestibulopathy.  Because this Court has affirmed the ALJ's findings concerning Plaintiff's mental RFC, the ALJ need not re-assess Plaintiff's mental impairments at step two, though he should account for the functional limitations, if any, resulting from the mental impairments when he makes the RFC determination.  *See* 20 C.F.R. § 404.1545(a)(2) (noting that the RFC determination must account for non-severe impairments); *see also Miller v. Astrue*, No. 11-CV-4523, 2012 WL

2899088, at *2 (S.D.N.Y. June 5, 2012) ("[T]he court is free under the fourth sentence to affirm a portion of the Commissioner's decision and reverse another portion as part of its remand order.").

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED.   This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).   The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 9, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court